# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

INTERNATIONAL AUTO LOGISTICS, LLC,

    Plaintiff,

    v.

VEHICLE PROCESSING CENTER OF FAYETTEVILLE, INC.; BRETT HARRIS; BRETT HARRIS CONSULTING;

    Defendants.

No. 2:16-CV-10

## ORDER

Before the Court is Plaintiff International Auto Logistics, LLC's ("International Auto") Application for Preliminary Injunction against Defendants Brett Harris and Brett Harris Consulting ("the Harris Defendants"). Dkt. No. 30. The Harris Defendants, already the subject of a clerk's default, did not respond to the Application. See Dkt. No. 35, 4:19-5:01.

A hearing on the Application was held on September 16, 2016. See generally id. The Harris Defendants did not appear, despite being notified of the hearing by certified mail and personal service of process. Id. at 5:24-6:25. International Auto filed an additional notice soon after. Dkt. No. 36.

The Application is now ready for disposition. For the reasons stated herein, it is hereby **GRANTED with the limitations set forth herein.**

## BACKGROUND

The following undisputed facts are taken from the pleadings and the sworn testimony of witnesses who appeared at the preliminary injunction hearing.

### International Auto Holds an Extremely Lucrative Department of Defense Contract

International Auto is a citizen of the Southern District of Georgia. Dkt. No. 1 ¶ 1. It has a government contract to "ship, receive and deliver privately-owned vehicles of military service and Department of Defense personnel stationed throughout the world." Id. ¶ 8. This contract was awarded by the Department of Defense's United States Transportation Command ("TRANSCOM"). Id.

The contract "could be [worth] one billion dollars" over five years. Dkt. No. 35, 49:12-13. It must be renewed annually. Id. at 49:06-08. The contract will be awarded anew in 2019 and could be worth another billion dollars; International Auto hopes to receive it. Id. at 49:13-21.

In the event International Auto is unable to perform its current contract, it will be denied future options. Id. at

52:14-15. It will also fail as a business, as it has no other contracts. Id. at 10:15-17, 52:15-16.

**VPCF Hired the Harris Defendants to Help It Collect International Auto's Supposed Debt**

Vehicle Processing Center of Fayetteville, Inc. ("VPCF")[1] alleges that International Auto owes it money. Dkt. No. 1 ¶¶ 2, 6; Dkt. No. 18 ¶¶ 13, 37-38. The Court is currently presiding over these parties' cross-claims pertaining to the alleged debt. See Dkt. Nos. 1, 18.

VPCF hired the Harris Defendants to help collect the debt. Dkt. No. 18 ¶ 14. The Harris Defendants are Brett Harris as an individual and Brett Harris Consulting, a business concern he apparently operates. Dkt. No. 1 ¶¶ 3-4. Their relationship with VPCF has ended. Dkt. No. 35, 8:05-13; Dkt. No. 37 at 1 ("Brett Harris is not currently authorized to do anything on behalf of VPCF.").

**Harris First Threatens to Contact Third Parties and the Government**

International Auto presented undisputed evidence that the Harris Defendants harassed International Auto's employees, its government and subcontractor partners, and various government agencies. The harassment began ten months ago and flared up again within the past two.

---

[1] An International Auto subcontractor; it takes no stance as to the Application's outcome. Dkt. No. 35, 4:17-18.

In November 2015, Harris phoned International Auto manager Jill Boggs, "directing [her] to deal with him on [a] settlement proposal between [International Auto] and [VPCF]." Dkt. No. 8, Ex. C at 10. Boggs informed VPCF that she would not do so. Id. Harris emailed Boggs three days later. Id. at 5. He warned Boggs that refusing to speak to him would "giv[e] [him] permission to get the information [he] need[ed] from other sources as [he] deem[ed] necessary and/or appropriate." Id. Harris also threatened investigations: "[A]gencies really seem to appreciate a curious little nosy-Nellie like me poking around and serving them up cases on a silver platter." Id. at 9.

**Harris Threatens a Subcontractor**

The undisputed evidence indicates that the next month, December 2015, Harris contacted "one of [International Auto's] principal subcontractors, Kay Lester." Dkt. No. 30, Ex. B ¶ 9. Lester is integral to International Auto's business, and loss of their relationship would put International Auto at risk of breach on its federal contract. Id. ¶ 14. Lester "expressed [to International Auto] her displeasure that she had been drawn into [the] dispute." Id. ¶ 9. Harris's call left Lester "quite angry" and her CFO "almost in tears." Dkt. No. 35, 36:02.

Minutes later, Harris contacted Lester's attorney Charles George to "threaten[] to report criminal allegations against

4

[International Auto] and Ms. Lester to various federal officials, unless VPCF was paid." Dkt. No. 30, Ex. B ¶ 10.

> Mr. Harris made a number of thinly-veiled threats to report [International Auto] and Ms. Lester's companies to the Department of Defense Investigator General. Mr. Harris refused to identify any particular conduct which he felt warranted such a report. Instead, Mr. Harris made a number of vague comments about "hypothetical" conduct which he indicated he planned to report . . . .

Id. Ex. D ¶ 6 (parenthetical omitted)).

Harris also went on a tirade against International Auto, telling George that

> there [we]re illegal activities going on, that [International Auto is] crooks[.] [Harris used] foul language . . . [describing International Auto as] sons-of-you-know-whatever. The F bomb was dropped at least three or four times . . . [Harris] also [said] that [International Auto was] racists . . . [who had] set [a man who is not a party] up for failure and ripped him off deliberately because he was black.

Dkt. No. 35, 38:06-14.

In a later talk with George, Harris claimed to have reported Lester's company to Texas tax authorities for a minor irregularity, but said that his "very good friend work[ed] there and they [we]re going to go easy" on the business. Id. at 40:01-02. The irregularity was real, but so obscure that George thought that it would be found "only [by] an individual that had either an axe to grind or was a very reckless and dangerous person." Id. at 40:12, 41:06-08.

During their final conversation, Harris told George that "[Lester's] team [] needed to put some pressure on [International Auto] to start paying some bills . . . and that [Lester's company] needed to fix it." Id. at 41:24-42:02. Harris said "that some unpleasant things could happen" if Lester's company did not cooperate: "Somebody could start making phone calls and report things that are going on. Doesn't matter if they are real or not. We can still report them or somebody could and then we could get the [Department of Defense] inspector general's office involved and that would create a huge mess." Id. at 42:05-06, 11-15 (emphasis added).

George accused Harris of extortion. Harris replied: "I do this all the time. This is how I make sure that I get the bills paid." Id. at 42:19-23. Harris "proceeded to [say] again that it was very easy to make a phone call or two and, quote/unquote, plant a seed." Id. at 43:04-05.

These conversations soured Lester's relationship with International Auto. Lester "has lost confidence . . . and began to question the value and the values of [International Auto]." Id. at 44:13-15. Any additional contact from Harris "will have further damage" and erode the good will that International Auto has begun to repair. Id. at 44:23, 45:21-46:02. Lester is already concerned about Harris's recent re-initiation of contact with International Auto. Id. at 46:03-08.

**Harris Contacts the Department of Defense**

According to the undisputed evidence presented by International Auto, in February 2016, U.S. Air Force Lt. Col. Todd Jensen, International Auto's prime TRANSCOM customer, informed International Auto that Harris had repeatedly called TRANSCOM. Dkt. No. 30, Ex. C ¶ 4; Dkt. No. 35, 33:02-04. One call Jensen himself answered "was quite lengthy, quite negative in regards to [International Auto]." Dkt. No. 35, 33:11-14.

Jensen "led [International Auto] to believe that . . . if [the calls] continued it would look poorly . . . in the Government's eyes." Id. at 33:15-17. He "advised [International Auto] that future calls by Mr. Harris . . . would cause problems." Dkt. No. 30, Ex. C ¶ 5.

**Harris Harasses International Auto's Employees and Cleaning Company**

Per the undisputed evidence presented in the pleadings and at the hearing, in July 2016, Harris called an International Auto employee located in Brunswick, Georgia, Karen Blocker, saying that International Auto needed to pay VPCF's debts to a company named A-1 Supply. Id. Ex. A ¶¶ 3-4; Dkt. No. 35, 29:24-30:09. Harris represented that A-1 Supply authorized him to make the call. Dkt. No. 35, 20:08-12. In fact, though, A-1 Supply has never "provide[d] any materials directly to

[International Auto]"; it is a VPCF supplier.  Id. at 20:21–21:02.

When Blocker told Harris that she had "no authority to make payment," he said "that he had contacted the FBI and . . . 'would be adding [her] name to the list.'"  Dkt. No. 30, Ex. A ¶¶ 6-7.  Blocker took this as a suggestion that not cooperating with Harris was a federal crime.  Dkt. No. 35, 26:18-27:01. Harris "asked [Blocker] if [she] was willing to watch [her] company go down and [her] with it."  Id. at 26:13-14.  He yelled at her until she hung up.  Dkt. No. 30, Ex. A ¶ 7.

Harris immediately called back and was answered by Deborah Davis of International Auto's human resources.  Dkt. No. 35, 27:21-22, 28:16-29:02.  Harris asked Davis "if [she] was aware that [International Auto] would go under and did [she] care." Id. at 28:17-18.  During their call, Harris referred to International Auto's president by a very offensive name.  Id. at 29:06-11.  He used other profanities, too.  Id. at 29:21-23. Harris told Davis that if she hung up, "he would know that [she] really didn't care about [the] company and . . . must not care about whether [she] had a job."  Id. at 31:01-03.  She hung up. Id. at 30:10-15.  The call offended Davis.  Id. at 31:20.  This call, too, was received in Georgia.  Dkt. No. 35, 29:24-30:09.

At some point, Harris called a small cleaning company working at an International Auto facility, accusing its owner of

"hiring felons to work in the facility." Dkt. No. 35, 17:10-13.
The call "upset [the owner] considerably." Id. at 17:13-14.

**Harris Files False Government Complaints**

Undisputed sworn testimony showed that Harris has also made
anonymous false complaints to the government. Id. ¶ 8. He
called an environmental agency and a fire department to allege
that an International Auto facility "had excessive amounts of
used motor oil laying around, that batteries were strewn along
the fence line of the property and that [the site] had asbestos
. . . untaken-care-of." Dkt. No. 35, 16:05-08. Subsequent
inspections failed to turn up evidence of any violations. Id.
at 16:09-10; Dkt. No. 30 Ex. B ¶ 8.

**International Auto Files Suit and Applies for a Preliminary Injunction**

International Auto filed suit against the Harris Defendants
in mid-January 2016, alleging tortious interferences with
contractual and business relations, tortious coercion, and
violations of the Georgia Uniform Deceptive Trade Practices Act
(GUDTPA). Dkt. No. 1 ¶¶ 26-35.

International Auto filed the present Application for
Preliminary Injunction on September 2, 2016. Dkt. No. 30 at 10.
The Court heard argument and evidence on the Application on
September 16, 2016. Dkt. No. 35. The Harris Defendants did not

appear, despite being notified of the hearing by certified mail and personal service. <u>Id.</u> at 5:24–6:25.

**Harris Threatens George for Testifying at the Hearing**

International Auto filed an additional notice on September 25, 2016. Dkt. No. 36. The notice informed the Court that after the hearing, Harris again contacted George. <u>Id.</u> at 5. Harris left a voicemail telling George that Harris knew about George's hearing testimony. <u>Id.</u> Harris "accused all involved with the action against him of being 'stupid.'" <u>Id.</u> at 6. Harris accused all such people of "messing with somebody who is far smarter than you are and has already figured out all of the plays that you can make and has already accounted for them." <u>Id.</u> Harris asserted that these people "should have 'figured out' that he 'kind of does not give a [shit]' about what happens" and figured out how he behaves, warning George not to oppose him. <u>Id.</u> (brackets omitted). Harris also accused George of perjury "and threatened retributive actions against [the attorney's] law licenses." <u>Id.</u>

## Legal Standard

For a preliminary injunction, International Auto must show:

> (1) a substantial likelihood of ultimate success on the merits; (2) [that] an injunction . . . is necessary to prevent irreparable injury; (3) [that] the threatened injury outweighs the harm the injunction . . . would inflict on the non-movant; and (4) [that] the injunction . . . would not be adverse to the public interest.

10

<u>Mitchell v. Williams</u>, No. 6:15-CV-93, 2016 WL 723038, at *4
(S.D. Ga. Feb. 22, 2016). International Auto must "clearly
establish[] the burden of persuasion as to all four elements."
<u>Horton v. City of St. Augustine</u>, 272 F.3d 1318, 1326 (11th Cir.
2001) (quotation marks omitted) (quoting <u>Siegel v. Lepore</u>, 234
F.3d 1163, 1175 (11th Cir. 2000)). "[T]he Court must provide
notice to the adverse party . . . ." <u>Mitchell</u>, 2016 WL 723038,
at *4 (citing Fed. R. Civ. P. 65(a)).

DISCUSSION

For the reasons herein, International Auto's Application is
**GRANTED with limitations.** Before turning to the preliminary
injunction elements, four procedural and constitutional
considerations are in order.

## I. THE HARRIS DEFENDANTS RECEIVED NOTICE.

The Court may issue a preliminary injunction because the
Harris Defendants received notice of a preliminary injunction
hearing. <u>See</u> Fed. R. Civ. P. 65(a)(1); <u>Mitchell</u>, 2016 WL
723038, at *4; Dkt. No. 35, 4:19-5:01, 5:24-6:25. Additionally,
the Clerk of Court and International Auto are hereby **ORDERED** to
serve personal notice of this Order on the Harris Defendants.

## II. THE COURT HAS JURISDICTION.

The Court has subject matter jurisdiction pursuant to
diversity. International Auto is a Georgia citizen, the Harris

Defendants are not,[2] and the amount in controversy exceeds $75,000.[3] Dkt. No. 1 ¶¶ 1, 3, 5.

The Court has personal jurisdiction. Personal jurisdiction requires satisfying both the state long-arm statute and federal constitutional due process. Gilmore v. Account Mgmt., Inc., No. 1:08-CV-1388, 2009 WL 2848278, at *3 (N.D. Ga. Apr. 27, 2009). The Court has personal jurisdiction over the Harris Defendants under Georgia's long-arm statute, and that jurisdiction satisfies federal constitutional due process.

Georgia's long-arm statute grants personal jurisdiction over non-resident defendants transacting any business in Georgia or committing a tortious act in Georgia. O.C.G.A. § 9-10-91(1)-(2). The Harris Defendants qualify as such "[b]ecause [they] sent [International Auto] multiple collection [emails] concerning a debt that allegedly occurred in Georgia and phoned [International Auto] in Georgia on multiple occasions."

---

[2] "[T]he district court . . . may review any evidence . . . to resolve factual disputes concerning . . . jurisdiction." Milleville v. United States, 751 F. Supp. 976, 977 (M.D. Fla. 1990). The Court finds that the Harris Defendants are not Georgia citizens. Harris was personally served at a Texas address. Dkt. No. 4 at 6; Pl.'s Ex. 1 at 1-2, Sept. 16, 2016 (under seal). On September 12-13, 2016, multiple Texans identified Harris as their neighbor and tenant. Pl.'s Ex. 1 at 1-2, Sept. 16, 2016 (under seal). Harris informed the Court that he was temporarily receiving mail at a friend's Texas residence on March 21, 2016. According to Harris's email byline, one of Brett Harris Consulting's office phone numbers has a Texas area code and the other a California one. Dkt. No. 8, Ex. C at 5, 10, 12. A preponderance of the evidence thus shows that the Harris Defendants are not Georgia citizens. See, e.g., Patel v. Patel, No. 4:14-CV-117, 2014 WL 5025821, at *2 (S.D. Ga. Oct. 7, 2014) (citing Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)).

[3] International Auto alleges that the Harris Defendants imperil a contract worth hundreds of millions of dollars, plus a billion-dollar contract prospect. Dkt. No. 35, 49:12-21.

Gilmore, 2009 WL 2848278, at *3; see also Belle Terrace Presbyterian Church v. CC Recovery, No. CV 112-084, 2014 WL 317190, at *2 (S.D. Ga. Jan. 28, 2014) ("[I]t appears that Defendant is a nonresident entity that purposefully engaged in debt collection efforts in Georgia, and the cause of action arises from those debt collection efforts. These allegations are sufficient" for Georgia long-arm jurisdiction).

Long-arm jurisdiction here satisfies federal constitutional due process. Due process limits the Court's personal jurisdiction to those defendants who have "minimum contacts" with Georgia and for whom personal jurisdiction is compatible with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement, 326 U.S. 310, 316 (1945). The minimum-contacts prong is satisfied "if the cause of action arises out of [even one] specific act" in Georgia. Gilmore, 2009 WL 2848278, at *3. That is the case here: "[The Harris] Defendant[s'] multiple contacts with Georgia relate directly to [International Auto's] claims against it." Id. at *4.

> Moreover, [the Harris Defendants] purposefully availed [themselves] of the privileges of conducting activities within Georgia when [they] knowingly sent demand [emails] and made collection calls to a Georgia resident to collect a debt allegedly incurred in Georgia . . . .

Id.   "Additionally, given [the Harris Defendants'] multiple phone calls and [emails] to [International Auto], it had fair warning that it might have to appear" here.   Id.

Long-arm jurisdiction here also satisfies fair play and substantial justice.   "Individuals should be able to file suit in the state where they receive illegal communications by out-of-state collection agencies because otherwise, collection agencies 'could invoke the protection of distance and send violative [communications] with relative impunity.'"   Id. (quoting Vlasak v. Rapid Collection Sys., Inc., 962 F. Supp. 1096, 1102 (N.D. Ill. 1997)).

## III. THE APPLICATION IS UNOPPOSED.

The present Application is unopposed.   "Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."   S.D. Ga. L. R. 7.5.   The Harris Defendants never responded, despite being aware of the Application.   See Dkt. No. 35, 4:19–5:01, 5:24–6:25.

Thus, the Court must only "review all of the evidentiary materials submitted in support" to "ensure that the [Application] . . . is supported."   United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101–02 (11th Cir. 2004).

## IV. A PRELIMINARY INJUNCTION IS CONSTITUTIONAL.

A preliminary injunction here is constitutional.   In Georgia, preliminary injunctions against libel and slander only

14

issue in rare cases because of freedom of speech. Cohen v. Advanced Med. Grp. of Ga., Inc., 496 S.E.2d 710 (Ga. 1998); Fernandez v. N. Ga. Regional Med. Ctr., Inc., 400 S.E.2d 6 (Ga. 1991); High Country Fashions, Inc. v. Marlenna Fashions, Inc., 357 S.E.2d 576 (Ga. 1987); Brannon v. Am. Micros Distribs., Inc., 342 S.E.2d 301 (Ga. 1986).[4]

Thus, International Auto must "carry the heavy burden" of showing that "it would be irreparably harmed . . . so as to justify the prior restraint." Cohen, 496 S.E.2d at 711. However, it can do so by showing major business disruption, especially disruption caused by false impersonation. See Parland v. Millennium Constr. Servs., LLC, 623 S.E.2d 670, 671, 673 (Ga. Ct. App. 2005).

International Auto has carried its burden. It presented undisputed evidence that the Harris Defendants could cost a contract worth hundreds of millions of dollars if not immediately enjoined, and that its business would collapse as a result. Lester clearly expressed that any additional contact from Harris "will have further damage" and erode International Auto's good will. Dkt. No. 35, 44:23, 45:21-46:02. Loss of

---

[4] The federal First Amendment is somewhat less restrictive. See, e.g., Snyder v. Phelps, 562 U.S. 443, 452 (2011) ("[R]estricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest . . . ."); Energy Four, Inc. v. Dornier Med. Sys., Inc., 765 F. Supp. 724, 735 (N.D. Ga. 1991) ("Dornier's statements are not entitled to first amendment protection because they are untrue."); but see Baker v. Joseph, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) ("[P]rior restraints on speech are disfavored.").

Lester as a business partner "would . . . put [International Auto] in a position where its continued performance [of its federal contract] was at risk." Id. at 52:02-03; see also id. at 52:17-19 (indicating that Lester's withdrawal would "quite possibl[y]" cause International Auto to default). Failure to perform would stop International Auto from "get[ting] any future options." Id. at 52:15. This would cause International Auto's "business [to] substantially . . . fail." Id. at 52:15-16.

Lester is not the only plug that the Harris Defendants could pull. Lt. Col. Jensen, who is International Auto's sole customer, "led [International Auto] to believe that he had some concern about the effect of [Harris's] further calls on the Government's relationship with [International Auto]." Id. at 33:19-22. "[I]f the calls continued and they got past him [to the general-officer level] . . . it could look poorly for [International Auto] in the future." Id. at 33:24-34:01.

The Harris Defendants are perhaps as close as one phone call away from destroying International Auto's relationship with either Lester or TRANSCOM—and just as close to snuffing International Auto out of existence.

The undisputed evidence also showed that the Harris Defendants are using impersonation, purporting to collect debts on behalf of VPCF and A-1 Supply when they in fact lack any

(current) authorization to do so.   This renders a preliminary injunction especially appropriate, pursuant to <u>Parland</u>.

This is the extremely rare case where a preliminary injunction against false or misleading speech comports with Georgia's constitutional values.

## V.   INTERNATIONAL AUTO IS ENTITLED TO A PRELIMINARY INJUNCTION.

Turning now to the preliminary injunction factors, two claims[5] undergird International Auto's Application: tortious interferences and GUDTPA.

There is irreparable injury here because "the loss of customers and goodwill" suffices. <u>BellSouth Telecommc'ns, Inc.</u> <u>v. MCIMetro Access Transmission Servs., LLC</u>, 425 F.3d 964, 970 (11th Cir. 2005) (quoting <u>Ferrero v. Ass'd Materials, Inc.</u>, 923 F.2d 1441, 1449 (11th Cir. 1991)).   As described above, this is an imminent risk, and International Auto already lost much good will with Lester.   Dkt. No. 35, 44: 13-15 (stating that Lester "has lost confidence . . . and began to question the value and the values of [International Auto].").

The balance of the equities favors an injunction, too, because the Harris Defendants have no right to commit torts or use deceptive trade practices.   Besides, their arrangement with

---

[5] International Auto has requested that a third tortious coercion count be dismissed without prejudice, with the ability to refile if the Harris Defendants file a criminal complaint. Dkt. No. 38 at 6 n.5.   The Court **GRANTS** this request.   <u>See, e.g.</u>, <u>Shannon v. Office Max N. Am., Inc.</u>, 662 S.E.2d 885, 888 (Ga. Ct. App. 2008) (holding threats not to be tortious coercion sans issuance of warrants or initiation of criminal proceedings).

VPCF has ended and International Auto owes no debt to A-1 Supply, so the Harris Defendants have no legitimate debt to collect. See, e.g., United States v. Gordon, No. CV205-158, 2005 WL 2237640, at *2 (S.D. Ga. Aug. 25, 2005) ("Defendants will merely be prevented from doing that which they have no right [to] do . . . ."); Dkt. No. 35, 8:05-13; 20:21-21:02.

Lastly, the public interest favors issuing a preliminary injunction because an injunction will "allow[] federal officials to carry out their duties free from harassment." Gordon, 2005 WL 2237640, at *2. It is in the public interest for Department of Defense officials, including Lt. Col. Jensen and the Office of Inspector General, to be free to do their work without Harris's wasting their time in pursuit of his vendetta against International Auto. It is in the public interest for the Court to be free to adjudicate this case without suffering unlawful harassment. See Dkt. No. 36 at 5-6 (describing Harris's insinuations regarding the way he behaves, directed at everyone involved in these proceedings).

## A. International Auto Has a Substantial Likelihood of Success on Its Tortious Interferences Claims.

International Auto has a substantial likelihood of success on the merits on its tortious interferences claim. To show tortious interferences, International Auto must prove "that 'the [Harris D]efendant[s]: (1) acted improperly and without

18

privilege; (2) acted purposefully and maliciously with the intent to injure; (3) induced a third party not to enter into or continue a business relationship with [it]; and (4) caused [it] some financial injury.'" Meadow Springs, LLC v. IH Riverdale, LLC, 747 S.E.2d 47, 50 (Ga. App. 2013).

"To establish . . . that the defendant acted 'without privilege,' the plaintiff must show that the defendant was a stranger to the contract or business relation at issue." Mabra v. SF, Inc., 728 S.E.2d 737, 740 (Ga. Ct. App. 2012). The Harris Defendants were strangers to International Auto's dealings with Lester, TRANSCOM, and its cleaning company. They were also strangers to International Auto's supposed debt after VPCF revoked their authorization to collect it.

The second element is satisfied for similar reasons. Malice is "unauthorized interference, or interference without legal justification or excuse." NationsBank, N.A. v. SouthTrust Bank of Ga., N.A., 487 S.E.2d 701, 707 (Ga. App. 1997) (citations omitted). The Harris Defendants lack any legal basis for harassing International Auto. They have no current arrangement with VPCF, and A-1 Supply never supplied International Auto, so they are not trying to collect any true debt. Dkt. No. 35, 8:05-13; 20:21-21:02; Dkt. No. 37 at 1.

As to the third and fourth elements, International Auto can satisfy its preliminary injunction burden merely by showing that

"there would be continued [wrongdoing]" that "would result in irreparable injury, damage, and loss." Norwich Pharmacal Co. v. Veterinary Corp. of Am., 296 F. Supp. 937, 942 (M.D. Ga. 1968); see also GSW, Inc. v. Long County, 999 F.2d 1508, 1519 (11th Cir. 1993). International Auto did so, showing that two months ago, the Harris Defendants resumed their harassment, and International Auto's relationships with its prime customer and a key subcontractor are near the breaking point. Nor have the Harris Defendants been daunted—they are now making veiled threats against an International Auto witness as a result of his testimony at the preliminary injunction hearing. See Dkt. No. 36 at 6 (warning George that those involved in these proceedings are "messing with somebody who is far smarter than you are and has already figured out all of the plays that you can make" and that these people "should have 'figured out'" how he behaves).

This evidence suffices even though International Auto has not yet been forced into breaching its federal contract, because the Harris Defendants made International Auto's "performance more difficult." Derosa v. Shiah, 421 S.E.2d 718, 722 (Ga. Ct. App. 1992) (quoting S. Bus. Machs. of Savannah, Inc. v. Norwest Fin. Leasing, Inc., 390 S.E.2d 402, 407 (Ga. Ct. App. 1990)). They sent International Auto into damage-control mode and required it to spend time repairing good will with Lester. Dkt. No. 35, 44:23, 45:21–46:02.

International Auto has thus shown a substantial likelihood of success on the merits and so is entitled to a preliminary injunction on the basis of tortious interferences.

### B. International Auto Has a Substantial Likelihood of Success under GUDTPA.

International Auto also has a substantial likelihood of success under GUDTPA. The Harris Defendants made factual misrepresentations that disparaged International Auto, and they are likely to do so again if not enjoined.

GUDTPA prohibits a person acting "in the course of his business, vocation, or occupation" from disparaging another's business "by false or misleading representation of fact." O.C.G.A. § 10-1-372(a)(8). GUDTPA does not require anyone to have actually been deceived. O.C.G.A. § 10-1-372(b).

International Auto has presented sufficient evidence that the Harris Defendants violated GUDTPA. In the course of their debt-collection business, they made false or misleading, disparaging, factual statements about International Auto. Harris told George that "there [we]re illegal activities going on, that [International Auto is] crooks[.] . . . [Harris] also [said] that [International Auto was] racists . . . [who had] set [a man who is not a party] up for failure and ripped him off deliberately because he was black." Dkt. No. 35, 38:06-14.

Harris also falsely reported environmental infractions to government agencies. Id. at 16:05-10; Dkt. No. 30 Ex. B ¶ 8.[6]

Harris threatened to make more false or misleading statements. He threatened to file an intentionally false report with the Department of Defense: "Somebody could start making phone calls and report things that are going on. Doesn't matter if they are real or not. We can still report them or somebody could and then we could get the [Department of Defense] inspector general's office involved and that would create a huge mess." Dkt. No. 35, 42:05-06, 11-15 (emphasis added). Further, as recently as July 2016, Harris threatened to report Blocker to the FBI, implying that refusing to cooperate with him was a federal crime. Dkt. No. 30, Ex. A ¶¶ 6-7.

These threats satisfy GUDTPA's requirement that International Auto be "likely to be damaged" in the future. O.C.G.A. § 10-1-373(a); see also Iler Grp., Inc. v. Discrete Wireless, Inc., 90 F. Supp. 3d 1329, 1342 (N.D. Ga. 2015)

---

[6] Of course, the Court cannot be absolutely certain that any of these statements were in fact misleading or false. But see Dkt. No. 35, 16:02-10; Dkt. No. 30 Ex. B ¶ 8 (indicating government inspections uncovered no evidence of what Harris reported to be highly visible violations). But the Harris Defendants' failure to oppose International Auto's application means that it does not have to be. It is enough that "the evidentiary materials submitted in support" of the Application in fact support the Application. United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101-02 (11th Cir. 2004). The allegation made in the Application—that Harris violation GUDTPA—is amply supported by these apparently unfounded accusations.

The Court will not put International Auto on trial as to each of them when the Harris Defendants have failed to do so. "[T]his is an adversarial system. It is not a court's task to research legal arguments on a party's behalf . . . ." Apex/FCC, LLC v. FlexiCrew Staffing, Inc., Civ. A. No. 12-0507, 2012 WL 5398803, at *4 (S.D. Ala. Nov. 1, 2012) (quoting Minemyer v. B-Roc Reps., Inc., 695 F. Supp. 2d 797, 809 (N.D. Ill. 2009)).

(requiring showing of ongoing harm); Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 n.34 (Ga. Ct. App. 2002). So does International Auto's identification of future harms. Dkt. No. 30, at 5-6 (describing future consequences of continued harassment).

Sufficient evidence has demonstrated that the Harris Defendants have violated GUDTPA, and they are likely to continue to do so if not enjoined. International Auto has shown a substantial likelihood of success on this claim, and so this is a second justification for a preliminary injunction.

## C. The Harris Defendants Are Enjoined.

The Court understands that the injunction here must be particularly narrow in deference to free speech rights. The Court will not restrain or enjoin any legitimate, lawful debt-collection efforts that the Harris Defendants may undertake. See, e.g., Carroll v. President & Comm'rs of Princess Anne, 393 U.S. 175, 181 (1968) ("[T]he [U.S. Supreme] Court has insisted upon careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit.").

### TERMS OF THE INJUNCTION

The Court thus **ENJOINS** Brett Harris and Brett Harris Consulting and their officers, agents, servants, and employees, from:

23

(a) making complaints to TRANSCOM or the Department of Defense Office of Inspector General regarding the conduct of (i) International Auto, (ii) International Auto's personnel, (iii) any entity that Harris knows to be in a contractual or other business relationship with International Auto, (iv) any entity that Harris knows to be owned by Kay Lester, or (v) Charles George, unless Harris believes in good faith that said conduct is unlawful and seeks permission from the Court for good cause shown;

(b) expressing to any person that Harris is authorized to collect a debt owed by International Auto until proof of such authorization is presented to the Court in the form of a sworn statement by the debt holder;

(c) contacting International Auto to attempt to collect any debt until proof of authorization to collect such a debt is presented to the Court in the form of a sworn statement by the debt holder;

(d) threatening any person whom Harris knows to be appearing as a party or as a witness before the Court in its adjudication of International Auto's claimed debt to VPCF with the intention of dissuading that person's participation in these proceedings; and

(e) making any disparaging statements of alleged fact to (i) International Auto, (ii) International Auto's officers,

agents, servants, and employees, (iii) any entity that Harris knows to be in a contractual or other business relationship with International Auto, (iv) any entity that Harris knows to be owned by Kay Lester, or (v) Charles George, about (i) International Auto, (ii) International Auto's personnel, (iii) any entity that Harris knows to be in a contractual or other business relationship with International Auto, (iv) any entity that Harris knows to be owned by Kay Lester, or (v) Charles George. However, if the Harris Defendants believe they have a good faith reason for making such disparaging statements, they may seek permission from the Court to do so for good cause shown.

This injunction is subject to modification by the Court's further order upon notice given to the parties. It will remain effective until this case is closed.

### CONCLUSION

International Auto's Application for Preliminary Injunction, dkt. no. 30, is hereby **GRANTED with limits** for the reasons stated above. Pursuant to Federal Rule of Civil Procedure 65(c), International Auto is hereby **ORDERED** to provide to the Clerk of Court security in the amount of $5000 by November 14, 2016.

**SO ORDERED**, this 7th day of November, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA