# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

INTERNATIONAL AUTO LOGISTICS, LLC,

        Plaintiff,

        v.

VEHICLE PROCESSING CENTER OF FAYETTEVILLE, INC.; BRETT HARRIS; BRETT HARRIS CONSULTING;

        Defendants.

No. 2:16-CV-10

## ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND PERMANENTLY ENJOINING HARRIS DEFENDANTS

Before the Court is Plaintiff International Auto Logistics, LLC's ("International Auto") Motion for Default Judgment against Brett Harris and Brett Harris Consulting ("the Harris Defendants"). Dkt. No. 39. For the reasons stated herein, the Motion is **GRANTED**. The following facts constitute the Court's findings of fact, and the following conclusions are the Court's legal conclusions necessitating the injunction issued herein.

### BACKGROUND

The following undisputed facts are taken from the pleadings and the sworn testimony of witnesses who appeared at the preliminary injunction hearing.

## International Auto Holds an Extremely Lucrative Department of Defense Contract

International Auto is a citizen of the Southern District of Georgia. Dkt. No. 1 ¶ 1. It has a government contract to "ship, receive and deliver privately-owned vehicles of military service and Department of Defense personnel stationed throughout the world." Id. ¶ 8. This contract was awarded by the Department of Defense's United States Transportation Command ("TRANSCOM"). Id.

The contract "could be [worth] one billion dollars" over five years. Dkt. No. 35, 49:12-13. It must be renewed annually. Id. at 49:06-08. The contract will be awarded anew in 2019 and could be worth another billion dollars; International Auto hopes to receive it. Id. at 49:13-21.

In the event International Auto is unable to perform its current contract, it will be denied future options. Id. at 52:14-15. It will also fail as a business, as it has no other contracts. Id. at 10:15-17, 52:15-16.

## VPCF Hired the Harris Defendants to Help It Collect International Auto's Supposed Debt

Vehicle Processing Center of Fayetteville, Inc. ("VPCF")[1] alleges that International Auto owes it money. Dkt. No. 1 ¶¶ 2, 6; Dkt. No. 18 ¶¶ 13, 37-38. The Court is currently

---

[1] An International Auto subcontractor.

AO 72A
(Rev. 8/82)

presiding over these parties' cross-claims pertaining to the alleged debt. See Dkt. Nos. 1, 18.

VPCF hired the Harris Defendants to help collect the debt. Dkt. No. 18 ¶ 14. The Harris Defendants are Brett Harris as an individual and Brett Harris Consulting, a business concern he apparently operates. Dkt. No. 1 ¶¶ 3-4. Their relationship with VPCF has ended. Dkt. No. 35, 8:05-13; Dkt. No. 37 at 1 ("Brett Harris is not currently authorized to do anything on behalf of VPCF.").

**Harris First Threatens to Contact Third Parties and the Government**

International Auto presented undisputed evidence that the Harris Defendants harassed International Auto's employees, its government and subcontractor partners, and various government agencies. The harassment began fourteen months ago and flared up again four months ago.

In November 2015, Harris phoned International Auto manager Jill Boggs, "directing [her] to deal with him on [a] settlement proposal between [International Auto] and [VPCF]." Dkt. No. 8, Ex. C at 10. Boggs informed VPCF that she would not do so. Id. Harris emailed Boggs three days later. Id. at 5. He warned Boggs that refusing to speak to him would "giv[e] [him] permission to get the information [he] need[ed] from other sources as [he] deem[ed] necessary and/or

AO 72A
(Rev. 8/82)

appropriate." **Id.** Harris also threatened investigations: "[A]gencies really seem to appreciate a curious little nosy-Nellie like me poking around and serving them up cases on a silver platter." **Id.** at 9.

**Harris Threatens a Subcontractor**

The undisputed evidence indicates that the next month, December 2015, Harris contacted "one of [International Auto's] principal subcontractors, Kay Lester." Dkt. No. 30, Ex. B ¶ 9. Lester is integral to International Auto's business, and loss of their relationship would put International Auto at risk of breach on its federal contract. **Id.** ¶ 14. Lester "expressed [to International Auto] her displeasure that she had been drawn into [the] dispute." **Id.** ¶ 9. Harris's call left Lester "quite angry" and her CFO "almost in tears." Dkt. No. 35, 36:02.

Minutes later, Harris contacted Lester's attorney Charles George to "threaten[] to report criminal allegations against [International Auto] and Ms. Lester to various federal officials, unless VPCF was paid." Dkt. No. 30, Ex. B ¶ 10.

> Mr. Harris made a number of thinly-veiled threats to report [International Auto] and Ms. Lester's companies to the Department of Defense Investigator General. Mr. Harris refused to identify any particular conduct which he felt warranted such a report. Instead, Mr. Harris made a number of vague comments about "hypothetical" conduct which he indicated he planned to report . . . .

Id. Ex. D ¶ 6 (parenthetical omitted)).

Harris also went on a tirade against International Auto, telling George that

> there [we]re illegal activities going on, that [International Auto is] crooks[.] [Harris used] foul language . . . [describing International Auto as] sons-of-you-know-whatever. The F bomb was dropped at least three or four times . . . [Harris] also [said] that [International Auto was] racists . . . [who had] set [a man who is not a party] up for failure and ripped him off deliberately because he was black.

Dkt. No. 35, 38:06-14.

In a later talk with George, Harris claimed to have reported Lester's company to Texas tax authorities for a minor irregularity, but said that his "very good friend work[ed] there and they [we]re going to go easy" on the business. Id. at 40:01-02. The irregularity was real, but so obscure that George thought that it would be found "only [by] an individual that had either an axe to grind or was a very reckless and dangerous person." Id. at 40:12, 41:06-08.

During their final conversation, Harris told George that "[Lester's] team [] needed to put some pressure on [International Auto] to start paying some bills . . . and that [Lester's company] needed to fix it." Id. at 41:24-42:02. Harris said "that some unpleasant things could happen" if Lester's company did not cooperate: "Somebody could start making phone calls and report things that are going on.

AO 72A
(Rev. 8/82)

Doesn't matter if they are real or not. We can still report them or somebody could and then we could get the [Department of Defense] inspector general's office involved and that would create a huge mess." Id. at 42:05-06, 11-15 (emphasis added).

George accused Harris of extortion. Harris replied: "I do this all the time. This is how I make sure that I get the bills paid." Id. at 42:19-23. Harris "proceeded to [say] again that it was very easy to make a phone call or two and, quote/unquote, plant a seed." Id. at 43:04-05.

These conversations soured Lester's relationship with International Auto. Lester "has lost confidence . . . and began to question the value and the values of [International Auto]." Id. at 44:13-15. Any additional contact from Harris "will have further damage" and erode the good will that International Auto has begun to repair. Id. at 44:23, 45:21-46:02. Lester is already concerned about Harris's recent re-initiation of contact with International Auto. Id. at 46:03-08.

**Harris Contacts the Department of Defense**

According to the undisputed evidence presented by International Auto, in February 2016, U.S. Air Force Lt. Col. Todd Jensen, International Auto's prime TRANSCOM customer, informed International Auto that Harris had repeatedly called TRANSCOM. Dkt. No. 30, Ex. C ¶ 4; Dkt. No. 35, 33:02-04. One

call Jensen himself answered "was quite lengthy, quite negative in regards to [International Auto]." Dkt. No. 35, 33:11-14.

Jensen "led [International Auto] to believe that . . . if [the calls] continued it would look poorly . . . in the Government's eyes." Id. at 33:15-17. He "advised [International Auto] that future calls by Mr. Harris . . . would cause problems." Dkt. No. 30, Ex. C ¶ 5.

**Harris Harasses International Auto's Employees and Cleaning Company**

Per the undisputed evidence presented in the pleadings and at the hearing, in July 2016, Harris called an International Auto employee located in Brunswick, Georgia, Karen Blocker, saying that International Auto needed to pay VPCF's debts to a company named A-1 Supply. Id. Ex. A ¶¶ 3-4; Dkt. No. 35, 29:24-30:09. Harris represented that A-1 Supply authorized him to make the call. Dkt. No. 35, 20:08-12. In fact, though, A-1 Supply has never "provide[d] any materials directly to [International Auto]"; it is a VPCF supplier. Id. at 20:21-21:02.

When Blocker told Harris that she had "no authority to make payment," he said "that he had contacted the FBI" and "would be adding [her] name to the list." Dkt. No. 30, Ex. A ¶¶ 6-7. Blocker took this as a suggestion that not

AO 72A
(Rev. 8/82)

helping Harris was a federal crime. Dkt. No. 35, 26:18-27:01. Harris "asked [Blocker] if [she] was willing to watch [her] company go down and [her] with it." Id. at 26:13-14. He yelled at her until she hung up. Dkt. No. 30, Ex. A ¶ 7.

Harris immediately called back and was answered by Deborah Davis of International Auto's human resources. Dkt. No. 35, 27:21-22, 28:16-29:02. Harris asked Davis "if [she] was aware that [International Auto] would go under and did [she] care." Id. at 28:17-18. During their call, Harris referred to International Auto's president by a very offensive name. Id. at 29:06-11. He used other profanities, too. Id. at 29:21-23. Harris told Davis that if she hung up, "he would know that [she] really didn't care about [the] company and . . . must not care about whether [she] had a job." Id. at 31:01-03. She hung up. Id. at 30:10-15. The call offended Davis. Id. at 31:20. This call, too, was received in Georgia. Dkt. No. 35, 29:24-30:09.

At some point, Harris called a small cleaning company working at an International Auto facility, accusing its owner of "hiring felons to work in the facility." Dkt. No. 35, 17:10-13. The call "upset [the owner] considerably." Id. at 17:13-14.

**Harris Files False Government Complaints**

8

Undisputed sworn testimony showed that Harris has also made anonymous false complaints to the government. Id. ¶ 8. He called an environmental agency and a fire department to allege that an International Auto facility "had excessive amounts of used motor oil laying around, that batteries were strewn along the fence line of the property and that [the site] had asbestos . . . untaken-care-of." Dkt. No. 35, 16:05-08. Subsequent inspections failed to turn up evidence of any violations. Id. at 16:09-10; Dkt. No. 30 Ex. B ¶ 8.

**International Auto Files Suit and Applies for a Preliminary Injunction**

International Auto filed suit against the Harris Defendants in mid-January 2016, alleging tortious interferences with contractual and business relations, tortious coercion, and violations of the Georgia Uniform Deceptive Trade Practices Act (GUDTPA). Dkt. No. 1 ¶¶ 26-35.

International Auto filed an Application for Preliminary Injunction on September 2, 2016. Dkt. No. 30 at 10. The Court heard argument and evidence on the Application on September 16, 2016. Dkt. No. 35. The Harris Defendants did not appear, despite being notified of the hearing by certified mail and personal service. Id. at 5:24-6:25.

**Harris Threatens George for Testifying at the Hearing**

9

International Auto filed an additional notice on September 25, 2016. Dkt. No. 36. The notice informed the Court that after the hearing, Harris again contacted George. Id. at 5. Harris left a voicemail telling George that Harris knew about George's hearing testimony. Id. Harris "accused all involved with the action against him of being 'stupid.'" Id. at 6. Harris accused them of "messing with somebody who is far smarter than you are and has already figured out all of the plays that you can make and has already accounted for them." Id. Harris asserted that these people "should have 'figured out' that he 'kind of does not give a [shit]' about what happens" and figured out how he behaves, warning George not to oppose him. Id. (brackets omitted). Harris also accused George of perjury "and threatened retributive actions against [the attorney's] law licenses." Id.

**The Court Issues a Preliminary Injunction**

The Court granted International Auto's preliminary injunction motion with limits on November 7, 2016. Dkt. No. 49. The Harris Defendants have yet to resurface, even though the Court mailed the order to Harris's last known address.

**International Auto Moves for Default Judgment**

International Auto had already moved for default judgment against the Harris Defendants on September 26, 2016. Dkt. No.

AO 72A
(Rev. 8/82)

39. It requested a permanent injunction and nominal damages. Id. at 3.

## Legal Standards

The Court has "discretion to determine whether it should enter [default] judgment" under Federal Rule of Civil Procedure 55(b). United States v. Elliott, No. 1:15-CV-106, 2016 WL 4083738, at *1 (S.D. Ga. Aug. 1, 2016). It can do so given an adequate basis in the pleadings. Am. Contractors Indemnity Co. v. Energy Smart Insulation Co., No. 6:15-CV-66, 2016 WL 3395546, at *1 (S.D. Ga. June 15, 2016) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). The movant must prove jurisdiction, liability, and damages. Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). A default is an admission of all well-pled factual allegations. Elliott, 2016 WL 4083738, at *1.

A movant seeking a permanent injunction has to show: (1) the wrongdoing alleged in its complaint; (2) absence of an adequate remedy at law; and (3) that irreparable harm will ensue unless injunctive relief issues. Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1128 (11th Cir. 2005).

## DISCUSSION

The Court will enter default judgment. It will also issue a permanent injunction and award nominal damages.

AO 72A
(Rev. 8/82)

## I. DEFAULT JUDGMENT IS ENTERED.

Default judgment against the Harris Defendants is proper because they are in default and International Auto has proven jurisdiction, liability, and damages.

### A. The Court Has Jurisdiction.

The Court has subject matter and personal jurisdiction. It has diversity subject matter jurisdiction. International Auto is a Georgia citizen, the Harris Defendants are not,[2] and the amount in controversy far exceeds $75,000.[3] Dkt. No. 1 ¶¶ 1, 3, 5.

The Court has personal jurisdiction. Proving personal jurisdiction requires satisfying both the state long-arm statute and federal constitutional due process. <u>Gilmore v. Account Mgmt., Inc.</u>, No. 1:08-CV-1388, 2009 WL 2848278, at *3

---

[2] "[T]he district court . . . may review any evidence . . . to resolve factual disputes concerning . . . jurisdiction." <u>Milleville v. United States</u>, 751 F. Supp. 976, 977 (M.D. Fla. 1990). The Court finds that the Harris Defendants are not Georgia citizens. Harris was personally served at a Texas address. Dkt. No. 4 at 6; Pl.'s Ex. 1 at 1-2, Sept. 16, 2016 (under seal). On September 12-13, 2016, multiple Texans identified Harris as their neighbor and tenant. Pl.'s Ex. 1 at 1-2, Sept. 16, 2016 (under seal). Harris informed the Court that he was temporarily receiving mail at a friend's Texas residence on March 21, 2016. According to Harris's email byline, one of Brett Harris Consulting's office phone numbers has a Texas area code, and the other a California one. Dkt. No. 8, Ex. C at 5, 10, 12. This indicates by a preponderance of the evidence that the Court has diversity jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Jory v. United States</u>, 562 F. App'x 926, 927 (11th Cir. 2014) (per curiam) (unpublished opinion) (identifying preponderance of the evidence as standard of proof for subject-matter jurisdiction) (citing <u>McCormick v. Aderholt</u>, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam)).

[3] International Auto alleges imperilment of a contract worth hundreds of millions of dollars, plus billion-dollar prospects. Dkt. No. 35, 49:12-21.

AO 72A
(Rev. 8/82)

(N.D. Ga. Apr. 27, 2009). The Court has personal jurisdiction over the Harris Defendants under Georgia's long-arm statute, and that jurisdiction satisfies federal constitutional due process.

Georgia's long-arm statute stretches personal jurisdiction over non-resident defendants who transact any business in Georgia or commit tortious acts here. O.C.G.A. § 9-10-91(1)-(2). The Harris Defendants qualify as such "[b]ecause [they] sent [International Auto] multiple collection [emails] concerning a debt that allegedly occurred in Georgia and phoned [it] in Georgia on multiple occasions." Gilmore, 2009 WL 2848278, at *3; see also Belle Terrace Presbyterian Church v. CC Recovery, No. CV 112-084, 2014 WL 317190, at *2 (S.D. Ga. Jan. 28, 2014) ("[I]t appears that Defendant is a nonresident entity that purposefully engaged in debt collection efforts in Georgia, and the cause of action arises from those debt collection efforts. These allegations are sufficient" for long-arm jurisdiction).

Jurisdiction here also satisfies federal constitutional due process. Due process limits personal jurisdiction to those defendants who have "minimum contacts" with the forum state and for whom jurisdiction comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement, 326

AO 72A
(Rev. 8/82)

U.S. 310, 316 (1945). The minimum-contacts prong is satisfied "if the cause of action arises out of [a] specific act" in the forum state. <u>Gilmore</u>, 2009 WL 2848278, at \*3. That is the case here: "[The Harris] Defendant[s'] multiple contacts with Georgia relate directly to [International Auto's] claims against it." <u>Id.</u> at \*4.

> Moreover, [the Harris Defendants] purposefully availed [themselves] of the privileges of conducting activities within Georgia when [they] knowingly sent demand [emails] and made collection calls to a Georgia resident to collect a debt allegedly incurred in Georgia . . . .

<u>Id.</u> "Additionally, given [the Harris Defendants'] multiple phone calls and [emails] to [International Auto], [they] had fair warning that [they] might have to appear" in a Georgia court. <u>Id.</u>

Long-arm jurisdiction here also satisfies fair play and substantial justice. "Individuals should be able to file suit in the state where they receive illegal communications by out-of-state collection agencies because otherwise, collection agencies 'could invoke the protection of distance and send violative [communications] with relative impunity.'" <u>Id.</u> (quoting <u>Vlasak v. Rapid Collection Sys., Inc.</u>, 962 F. Supp. 1096, 1102 (N.D. Ill. 1997)). The Court has jurisdiction.

**B. The Harris Defendants Are Liable.**

AO 72A
(Rev. 8/82)

The Harris Defendants are liable for GUDTPA violations and tortious interferences.[4]

### i. The Harris Defendants violated GUDTPA.

The Harris Defendants violated GUDTPA. They made factual misrepresentations that disparaged International Auto, and are likely to do so again in the future. GUDTPA prohibits a person acting "in the course of his business, vocation, or occupation" from disparaging another's business "by false or misleading representation of fact." O.C.G.A. § 10-1-372(a)(8). GUDTPA does not require anyone to have actually been deceived. Id. § 10-1-372(b).

International Auto has presented sufficient evidence that the Harris Defendants violated GUDTPA. In the course of their debt-collection business, they made false or misleading, disparaging, factual statements about International Auto. Harris told George that "there [we]re illegal activities going on, that [International Auto is] crooks[.] . . . [Harris] also [said] that [International Auto was] racists . . . [who had] set [a man who is not a party] up for failure and ripped him off deliberately because he was black." Dkt. No. 35, 38:06–

---

[4] International Auto's tortious coercion count was dismissed without prejudice. Dkt. No. 49 at 17 n.5.

AO 72A
(Rev. 8/82)

14. Harris also falsely reported environmental infractions to government agencies. Id. at 16:05-10; Dkt. No. 30 Ex. B ¶ 8.[5]

Harris threatened to make more false or misleading statements. He threatened to file an intentionally false report with the Department of Defense: "Somebody could start making phone calls and report things that are going on. Doesn't matter if they are real or not. We can still report them or somebody could and then we could get the [Department of Defense] inspector general's office involved and that would create a huge mess." Dkt. No. 35, 42:05-06, 11-15 (emphasis added). Further, as recently as July 2016, Harris threatened to report Blocker to the FBI, implying that refusing to cooperate with him was a federal crime. Dkt. No. 30, Ex. A ¶¶ 6-7. These threats satisfy GUDTPA's requirement that International Auto be "likely to be damaged" in the future. O.C.G.A. § 10-1-373(a); see also Iler Grp., Inc. v. Discrete Wireless, Inc., 90 F. Supp. 3d 1329, 1342 (N.D. Ga. 2015) (requiring showing of ongoing harm); Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 n.34 (Ga. Ct. App. 2002). So does International Auto's identification of future harms.

---

[5] Of course, the Court cannot be absolutely certain that any of these statements were in fact misleading or false. But see Dkt. No. 35, 16:02-10; Dkt. No. 30 Ex. B ¶ 8 (indicating government inspections uncovered no evidence of what Harris reported to be highly visible violations). But the Court will not put International Auto on trial as to them when the Harris Defendants have failed to do so. "[T]his is an adversarial system." Apex/FCC, LLC v. FlexiCrew Staffing, Inc., Civ. A. No. 12-0507, 2012 WL 5398803, at *4 (S.D. Ala. Nov. 1, 2012) (quoting Minemyer v. B-Roc Reps., Inc., 695 F. Supp. 2d 797, 809 (N.D. Ill. 2009)).

Dkt. No. 30, at 5-6 (describing future consequences of continued harassment).

Sufficient evidence has demonstrated that the Harris Defendants have violated GUDTPA, and are likely to continue to do so in the future. International Auto has shown their liability.

### ii. The Harris Defendants committed tortious interferences.

The Harris Defendants are also liable for tortious interferences. To show tortious interferences, International Auto must prove "that 'the [Harris D]efendant[s]: (1) acted improperly and without privilege; (2) acted purposefully and maliciously with the intent to injure; (3) induced a third party not to enter into or continue a business relationship with [it]; and (4) caused [it] some financial injury.'" Meadow Springs, LLC v. IH Riverdale, LLC, 747 S.E.2d 47, 50 (Ga. App. 2013).

"To establish . . . that the defendant acted 'without privilege,' the plaintiff must show that the defendant was a stranger to the contract or business relation at issue." Mabra v. SF, Inc., 728 S.E.2d 737, 740 (Ga. Ct. App. 2012). The Harris Defendants were strangers to International Auto's dealings with Lester, TRANSCOM, and its cleaning company. They were also strangers to International

Auto's supposed debt after VPCF revoked their authorization to collect it.

The second element is satisfied for similar reasons. Malice is "unauthorized interference, or interference without legal justification or excuse." NationsBank, N.A. v. SouthTrust Bank of Ga., N.A., 487 S.E.2d 701, 707 (Ga. App. 1997) (citations omitted). The Harris Defendants lack any legal basis for harassing International Auto. They have no current arrangement with VPCF, and A-1 Supply never supplied International Auto, so they are not trying to collect any true debt. Dkt. No. 35, 8:05-13; 20:21-21:02; Dkt. No. 37 at 1.

As to the third and fourth elements, "interference with a contractual right or relationship need not result in a breach of the contract . . . It is sufficient if the invasion retards the performance . . . or makes [it] more difficult or expensive." Derosa v. Shiah, 421 S.E.2d 718, 722 (Ga. Ct. App. 1992) (quoting S. Business Machines of Savannah, Inc. v. Norwest Fin. Leasing, Inc., 390 S.E.2d 402, 407 (Ga. Ct. App. 1990)). International Auto's evidence suffices, even though it has not yet been forced into breaching its federal contract. The Harris Defendants sent International Auto into damage-control mode and required it to spend time repairing good will with Lester. Dkt. No. 35, 44:23, 45:21-46:02. The Harris Defendants are liable for tortious interferences.

AO 72A
(Rev. 8/82)

**C. International Auto Has Suffered Damages.**

Finally, International Auto has proven damages on both of its claims. As explained above, a party proves GUDTPA damages merely by showing that it is "likely to be damaged," and here, International Auto has done so. See discussion supra; O.C.G.A. § 10-1-373(a) ("Proof of monetary damage [or] loss of profits . . . is not required."). It also showed tortious interferences damages, in that its federal contract performance has been made harder. See Dkt. No. 35, 44:23, 45:21–46:02.

For the foregoing reasons, default judgment is hereby **ENTERED** against the Harris Defendants.

**II. THE HARRIS DEFENDANTS ARE PERMANENTLY ENJOINED.**

International Auto seeks both a permanent injunction and nominal damages. Dkt. No. 39 at 3. These are appropriate.

**A. The Harris Defendants Are Permanently Enjoined.**

The Harris Defendants shall be permanently enjoined because International Auto has satisfied its prima facie case, injunctive relief here is constitutional, and an appropriately narrow injunction will issue.

> **i. International Auto is entitled to a permanent injunction.**

A permanent injunction is prima facie proper given: (1) the Harris Defendants' wrongdoing; (2) the irreparable harm

that will result without injunctive relief; and (3) absence of an adequate remedy at law. Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1128 (11th Cir. 2005). In fact, an injunction "is the only remedy" under GUDTPA. Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. Ct. App. 2002).

### ii. Injunctive relief here is constitutional.

Injunctive relief here is compatible with Georgia's respect for free speech. In Georgia, injunctions against libel and slander only issue in rare cases because of freedom of speech. Cohen v. Advanced Med. Grp. of Ga., Inc., 496 S.E.2d 710 (Ga. 1998); Fernandez v. N. Ga. Regional Med. Ctr., Inc., 400 S.E.2d 6 (Ga. 1991); High Country Fashions, Inc. v. Marlenna Fashions, Inc., 357 S.E.2d 576 (Ga. 1987); Brannon v. Am. Micros Distribs., Inc., 342 S.E.2d 301 (Ga. 1986).[6] Thus, International Auto must "carry the heavy burden" of showing that "it would be irreparably harmed . . . so as to justify the prior restraint." Cohen, 496 S.E.2d at 711. However, it can do so by showing major business disruption, especially that caused by false impersonation. See Parland v. Millennium

---

[6] The federal First Amendment is somewhat less restrictive. See, e.g., Snyder v. Phelps, 562 U.S. 443, 452 (2011) ("[R]estricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest . . . ."); Energy Four, Inc. v. Dornier Med. Sys., Inc., 765 F. Supp. 724, 735 (N.D. Ga. 1991) ("[The defendant's] statements are not entitled to first amendment protection because they are untrue."); but see Baker v. Joseph, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013) ("[P]rior restraints on speech are disfavored.").

AO 72A
(Rev. 8/82)

<u>Constr. Servs., LLC</u>, 623 S.E.2d 670, 671, 673 (Ga. Ct. App. 2005).

International Auto has carried its burden. It presented undisputed evidence that the Harris Defendants could cost it a contract worth hundreds of millions of dollars if not enjoined, and that its business would collapse as a result. Lester clearly expressed that any additional contact from Harris "will have further damage" and erode International Auto's good will. Dkt. No. 35, 44:23, 45:21–46:02 (testimony of Charles George). Loss of Lester as a business partner "would . . . put [International Auto] in a position where its continued performance [of its federal contract] was at risk." <u>Id.</u> at 52:02–03; <u>see also id.</u> at 52:17–19 (indicating that Lester's withdrawal would "quite possibl[y]" cause International Auto to default). Failure to perform would stop International Auto from "get[ting] any future options." <u>Id.</u> at 52:15. This would cause International Auto's "business [to] substantially . . . fail." <u>Id.</u> at 52:15–16.

The Harris Defendants are perhaps as close as one phone call away from destroying International Auto's relationship with Lester—and potentially just as close to snuffing International Auto out of existence. The undisputed evidence also showed that the Harris Defendants are using impersonation, purporting to collect debts on behalf of VPCF

and A-1 Supply when they in fact lack any (current) authorization to do so. This renders an injunction especially appropriate, pursuant to Parland.

Thus, this is the extremely rare case where an injunction against false or misleading speech comports with Georgia's constitutional values.

### iii. The Harris Defendants are enjoined.

The Court understands that the injunction here must be particularly narrow in deference to free speech rights. The Court will not restrain or enjoin any legitimate, lawful debt-collection efforts that the Harris Defendants may undertake. See, e.g., Carroll v. President & Comm'rs of Princess Anne, 393 U.S. 175, 181 (1968) ("[T]he [U.S. Supreme] Court has insisted upon careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit.").

The Court thus **ENJOINS** Brett Harris and Brett Harris Consulting and their officers, agents, servants, and employees, from:

(a) making complaints to TRANSCOM or the Department of Defense Office of Inspector General regarding the conduct of (i) International Auto, (ii) International Auto's personnel, (iii) any entity that Harris knows to be in a contractual or other business relationship with International Auto, (iv) any

entity that Harris knows to be owned by Kay Lester, or (v) Charles George, unless Harris believes in good faith that said conduct is unlawful and seeks permission from the Court for good cause shown;

(b) expressing to any person that Harris is authorized to collect a debt owed by International Auto until proof of such authorization is presented to the Court in the form of a sworn statement by the debt holder;

(c) contacting International Auto to attempt to collect any debt until proof of authorization to collect such a debt is presented to the Court in the form of a sworn statement by the debt holder;

(d) threatening any person whom Harris knows to be appearing as a party or as a witness before the Court in its adjudication of International Auto's claimed debt to VPCF with the intention of dissuading that person's participation in these proceedings; and

(e) making any disparaging statements of alleged fact to (i) International Auto, (ii) International Auto's officers, agents, servants, and employees, (iii) any entity that Harris knows to be in a contractual or other business relationship with International Auto, (iv) any entity that Harris knows to be owned by Kay Lester, or (v) Charles George, about (i) International Auto, (ii) International Auto's personnel, (iii)

AO 72A
(Rev. 8/82)

any entity that Harris knows to be in a contractual or other business relationship with International Auto, (iv) any entity that Harris knows to be owned by Kay Lester, or (v) Charles George. However, if the Harris Defendants believe they have a good faith reason for making such disparaging statements, they may seek permission from the Court to do so for good cause shown.

This injunction is subject to modification by the Court's further order upon notice given to the parties.

### B. Nominal Damages Are Granted.

Turning to nominal damages, International Auto must rely on its tortious interferences claim. See O.C.G.A. § 10-1-373(a); Catrett, 560 S.E.2d at 106. It proved that claim. It is thus entitled to nominal damages. See O.C.G.A. § 51-12-4 (authorizing award of nominal damages for any injury); Se. Waste Treatment, Inc. v. Chem-Nuclear Sys., Inc., 506 F. Supp. 944, 950 (N.D. Ga. 1980) (noting availability of nominal damages for willful torts).

Its request for them is hereby **GRANTED** in the amount of $100. See First Fed. Sav. & Loan Ass'n of Atlanta v. White, 309 S.E.2d 858, 859 (Ga. Ct. App. 1983) (holding that "the sum awarded as nominal damages may, according to circumstances, 'vary almost indefinitely'" according to underlying injury (quoting Sellers v. Mann, 39 S.E. 11, 11 (Ga. 1901))).

24

**CONCLUSION**

For the reasons stated above, International Auto's Motion for Default Judgment against Brett Harris and Brett Harris Consulting, dkt. no. 39, is **GRANTED**. The Clerk of Court is **DIRECTED** to mail a copy of this order to Harris at his last known address, and International Auto is **ORDERED** to cause this Order to be personally served on the Harris Defendants.

**SO ORDERED**, this 13th day of January, 2017.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)