# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

INTERNATIONAL AUTO LOGISTICS, LLC,

    Plaintiff,

v.

VEHICLE PROCESSING CENTER OF FAYETTEVILLE, INC.; BRETT HARRIS; and BRETT HARRIS CONSULTING;

    Defendants.

2:16-CV-10

FILED
Scott L. Poff, Clerk
United States District Court
By casbell at 9:03 am, Jul 05, 2017

## ORDER

On rare occasion, victory and defeat are hard to tell apart. See, e.g., JEAN-PAUL SARTRE, THE DEVIL & THE GOOD LORD 4 (trans. Kitty Black 1960) ("A victory described in detail is indistinguishable from a defeat."); PLUTARCH, THE LIFE OF PYRRHUS 417 (trans. Bernadotte Perrin 1920) ("If we are victorious in one more battle with the Romans, we shall be utterly ruined." (quoting Pyrrhus of Epirus)). But it was obvious who won and who lost when this Court held that Defendant Vehicle Processing Center of Fayetteville, Inc. ("VPCF") "undisputedly breached [a] Subcontract and there [wa]s no genuine factual dispute" as to Plaintiff International Auto Logistics, LLC's ("IAL") damages calculation—such that IAL was "entitled to

summary judgment." Dkt. No. 68 at 8. For this reason, and the others given below, IAL's bill of costs, dkt. no. 73, will be **TAXED** to VPCF, and IAL's motion for attorneys' fees, dkt. no. 74, will be **GRANTED**.

**BACKGROUND**

VPCF had a subcontract to run a vehicle-processing and storage center for IAL, a government contractor. Dkt. No. 68 at 1. VPCF violated labor laws and tried to cover that up. Id. at 5-6. IAL found out and terminated the subcontract. Id. IAL calculated what it owed VPCF as being just south of $60,000. Id. at 6. VPCF responded by claiming that it was entitled to 95.5% of everything IAL earned from the government—over $3,000,000. Id.

IAL sought declaratory judgment as to what it owed VPCF and VPCF counterclaimed breach of contract. Id. at 7. IAL repeatedly informed VPCF that it was seeking attorneys' fees. Dkt. No. 79 at 25 (extracting from Sept. 8, 2016 deposition), 32 (extracting from June 10, 2016 initial disclosures). The Court ultimately held that VPCF, not IAL, breached the subcontract. Dkt. No. 68 at 11-13. It then held that IAL properly calculated how much it owed VPCF. Id. at 13-19.

IAL moved for costs and attorneys' fees on May 30, 2017. Dkt. Nos. 73-1, 74. Both matters have been fully briefed and are now ripe for disposition. Dkt. Nos. 76, 78-79.

## LEGAL STANDARD

"As a general rule, an award of attorney fees and expenses of litigation are not available to the prevailing party unless authorized by statute or contract." Cary v. Guiragossian, 508 S.E.2d 403, 406 (Ga. 1998). "[I]n the absence of a controlling statute, a party's entitlement to attorney fees under a contractual provision is determined by the usual rules of contract interpretation." Benchmark Builders, Inc. v. Schultz, 711 S.E.2d 639, 640 (Ga. 2011) (citation omitted); accord City Heights Condo. Ass'n, Inc. v. Bambara, 788 S.E.2d 563 (Ga. Ct. App. 2016) (applying similar rule in costs context); Dan J. Sheehan Co. v. McCrory Constr. Co., 643 S.E.2d 546, 549 (Ga. Ct. App. 2006) (holding arbitrator appropriately considered "the contractual language regarding . . . costs").

## DISCUSSION

IAL is entitled to costs and fees. VPCF objects on four grounds: (1) IAL did not prevail; (2) there is no contractual basis for awarding fees; (3) IAL never tendered any money to VPCF; and (4) the fees request is not specific enough. Dkt. No. 76 at 3; Dkt. No. 78 at 1. The first argument is frivolous. The remaining three are not much better and are also meritless.

AO 72A
(Rev. 8/82)

## I. IAL WAS THE PREVAILING PARTY.

VPCF absurdly claims that *it* "is entitled to attorney's fees because it was the prevailing party." Dkt. No. 76 at 6. It goes so far as to promise that it "will seek an award of attorney's fees." Id. at 7. This effort would be in vain. It is extremely clear that IAL prevailed. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992) (interpreting 42 U.S.C. § 1988). "In other words, there must be: (1) a situation where a party has been awarded by the court '"at least some relief on the merits of his claim"' *or* (2) a 'judicial *imprimatur* on the change' in the legal relationship between the parties." Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir. 2003) (interpreting 42 U.S.C. § 1988) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603, 605 (2001) (interpreting 42 U.S.C. §§ 3613(c)(2), 12205)); see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989) (interpreting 42 U.S.C. § 1988) (requiring only that party prevail as to "any significant issue" (citation omitted)). A declaratory judgment "will usually satisfy that

4

test." Lefemine v. Wideman, 568 U.S. 1, 4 (2012) (interpreting 42 U.S.C. § 1988).

VPCF's argument as to how *it* prevailed is threefold: "The Court has ultimately held that [IAL] owes [VPCF] $59,446.58," whereas IAL initially offered VPCF $3000 less than that and "took the position that it owed nothing." Dkt. No. 76 at 5; see also id. at 6 ("[T]here was no relief granted to [IAL] against [VPCF]."). "IAL had previously dismissed its other claims against VPCF . . . ." Id. at 7. And "IAL could have filed an interpleader action, but it did not." Id. at 5.

The first contention is more slanted than a funhouse mirror. In its complaint, IAL asked the Court to issue declaratory judgment as to "the amount, if any, due to VPCF." Dkt. No. 1 ¶ 23. IAL alleged that it "calculated the amount it determined to be due," but that VPCF rejected this amount and "contended that it was due more than $2 million more." Id. ¶¶ 13-14. By summary judgment, IAL asked the Court to decide that it owed $59,446.58—the amount the Court ultimately accepted. Dkt. No. 46 at 16; Dkt. No. 68 at 19. This was indeed $3000 more than IAL offered VPCF before litigation—because IAL voluntarily reconsidered one of the offsets it had made. Dkt. No. 44-3 ¶ 42. On every issue that remained in dispute, the Court sided with IAL. It totally rejected VPCF's

claim that it was entitled to nearly 58 times more than IAL alleged was due. Dkt. No. 68 at 13-16.

As for IAL's dismissal of certain claims against VPCF, a party prevails as long as it wins on any significant issue. <u>Tex. State Teachers Ass'n</u>, 489 U.S. at 791-92. IAL satisfies that standard by a wide margin.

Regarding interpleading, VPCF offers only a single sentence: "IAL could have filed an interpleader action, but it did not." Dkt. No. 76 at 5. This might be a belated merits argument. It might just be an inchoate thought. The Court need not decide. <u>Cf. Resolution Tr. Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . . Rather, the onus is upon the parties to formulate arguments . . . ."). Whatever the case, interpleader is not a basis for finding that IAL failed to prevail. Some unconventional vernacular meanings of "winning" notwithstanding,[1] IAL prevailed in this case.[2]

---

[1] <u>See, e.g.</u>, Katy Steinmetz, *Winning/Winner*, Time (Dec. 7, 2011), http://content.time.com/time/specials/packages/article/0,28804,2101344_2100571_2100573,00.html ("Once upon a time, the verb *win* meant 'to be victorious.' . . . Charlie Sheen had solidified a definition for the term that goes something like this: *winning* (v.): 'participating in an ostensibly drug-induced, highly public flameout, during which one loses an incredibly lucrative job and, subsequently, the respect of the American people.' Or more, succinctly: *winning (v.): losing*." (emphasis added)).

[2] As this was the only reason VPCF gave for opposing IAL's bill of costs, <u>see</u> dkt. no. 78, those costs will be **TAXED**.

## II. THE SUBCONTRACT AUTHORIZES A FEE AWARD.

VPCF next contends that the subcontract does not authorize a fee award here. This argument touches on genuine difficulties posed by the subcontract, but is not ultimately persuasive. Subcontract section 26 has four paragraphs. The first gives IAL the option of taking "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof," to arbitration. Dkt. No. 5 § 26. The second specifies where such arbitration would happen. Id. The third says, "Notwithstanding the foregoing, any Party may, at any time, apply to any Court of competent jurisdiction for injunctive relief . . . to prevent irreparable harm." Id. The last provides: "In any action initiated by either party under this section, the prevailing party shall be entitled to recover its expenses incurred, including its reasonable attorney's fees." Id.

The questions are whether the current matter was "initiated" under section 26 and whether IAL was "the prevailing party" within the last paragraph's meaning. Clearly, this case was not arbitrated. And, although IAL did apply to the Court for injunctive relief against VPCF and other defendants to prevent irreparable harm in the form of harassing debt-collection efforts, no injunctive relief issued against VPCF. Dkt. No. 1 at 10; Dkt. No. 49.

Nevertheless, the Court answers the above questions in the affirmative. This case was literally "initiated" by IAL to secure injunctive relief against VPCF to prevent irreparable harm. Although a different outcome might have been required had IAL lacked a good-faith basis for doing so, it in fact had one—it did not know whether VPCF had authorized the harassment.

But is IAL the prevailing party, even though it did not prevail specifically as to enjoining VPCF? Yes. Section 26's two requirements, initiation and prevailing, are independent of each other. The last paragraph refers to "any action." That means the parties intended for it to apply to a broader suit that grew out of an effort to seek injunctive relief—like this one. Further, the paragraph refers to any action "initiated" under section 26, rather than limiting fees to an action *resulting* in relief mentioned therein. The paragraph also uses the term "prevailing party," without qualification. Id. Had the parties meant to narrow this to a party who received injunctive relief against the other, they could have said so. Turning from text to context, the last paragraph is physically separate from the third. Under section 26, then, seeking injunctive relief under the third paragraph opened the door to a broader case, the prevailing party of which was

authorized by the last paragraph to seek costs and fees. The subcontract lets IAL recover fees here.

### III. TENDER IS IRRELEVANT.

VPCF says IAL cannot obtain attorneys' fees because it "failed to tender what it admitted it owed when it terminated the contract with VPCF." Dkt. No. 76 at 8. This suit, according to VPCF, happened because IAL tried to "force VPCF into submission." Id. at 9. This is false. Before litigation, IAL offered VPCF $56,446.58. Dkt. No. 44-3 ¶ 36. VPCF rejected that. Id. ¶ 38. Four days after filing suit, IAL offered VPCF "$112,000.00 (twice the amount [IAL] believed to be owed)." Id. ¶ 41. VPCF rejected that, too. Id. The reason why became clear in litigation: VPCF insisted on its entitlement to $3,144,450.70. Dkt. No. 68 at 6.

VPCF waged legal war on IAL for a year and a half based on a contractual interpretation this Court deemed "patently" wrong. Id. at 16. For it to now cast IAL as trying to strong-arm it boggles the mind. IAL's supposed failure of tender is no reason to withhold attorneys' fees.

### IV. THE FEES REQUEST IS SPECIFIC ENOUGH.

VPCF lastly argues that IAL's fee request is not supported by records "address[ing] the issue of what alleged attorney's fees relate to what specific issue," and that "[f]ees relating to issues which were not decided in favor of

the party seeking attorney's fees should be excluded." Dkt. No. 76 at 7. This is yet another mischaracterization. IAL's counsel plainly specified how much time was spent on individual issues and segregated out the claims on which IAL prevailed. Dkt. No. 74 at 17, 89-98. IAL made reasonable, generally 50% reductions to the amount of time it spent on issues relating to the complaint to reflect the fact that the complaint concerned both VPCF and other defendants. Id. at 17, 89-90; see also Dkt. No. 1. Although VPCF does not contest the reasonability of the fee rate, the Court has reviewed it and found it appropriate given prevailing market rates, "the type of litigation at issue," and the skill and experience of the legal personnel involved. Miller v. Kenworth of Dothan, Inc., 117 F. Supp. 2d 1247, 1258-59 (M.D. Ala. 2000). VPCF's final contention therefore fails.

## CONCLUSION

For the reasons above, IAL's bill of costs, dkt. no. 73-1, is **TAXED** to VPCF in the amount of **$3052.80,** and its Motion for Award of Attorneys' Fees, dkt. no. 74, is **GRANTED** in the amount of **$76,359.60.** Thus, VPCF owes IAL **$79,412.40** in combined costs and fees.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 5th day of July, 2017.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA